Justice Breyer,
dissenting.
I join Justice Stevens’ dissent, while reserving judgment as to whether § 7(a)(2) of the Endangered Species Act of 1973, 16 U. S. C. § 1536(a)(2), really covers every possible agency action even of totally unrelated agencies — such as, say, a discretionary determination by the Internal Revenue Service whether to prosecute or settle a particular tax liability, see 26 U.S. C. §7121.
At the same time I add one additional consideration in support of his (and my own) dissenting views. The Court emphasizes that “[b]y its terms, the statutory language [of § 402(b) of the Clean Water Act, 33 U. S. C. § 1342(b),] is mandatory and the list exclusive; if the nine specified criteria are satisfied, the EPA does not have the discretion to deny a transfer application.” Ante, at 661 (emphasis added). My own understanding of agency action leads me to believe that the majority cannot possibly be correct in concluding that the structure of § 402(b) precludes application of § 7(a)(2) to the EPA's discretionary action. See ante, at 690-692 (Stevens, J., dissenting). That is because grants of discretionary authority always come with some implicit limits attached. See L. Jaffe, Judicial Control of Administrative Action 359 (1965) (discretion is “a power to make a choice” from a “permissible class of actions”). And there are likely numerous instances in which, prior to, but not after, the enactment of § 7(a)(2), the statute might have implicitly placed “species preservation” outside those limits.
*699 To take one example, consider the statute that once granted the old Federal Power Commission (FPC) the authority to grant a “certificate of public convenience and necessity” to permit a natural gas company to operate a new pipeline. See 15 U. S. C. § 717f(c)(l)(A). It says that “a certificate shall be issued to any qualified applicant therefor ... if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed . . . and that the proposed service ... is or will be required by the present or future public convenience and necessity.” § 717f(e).
Before enactment of the Endangered Species Act of 1973, 87 Stat. 884, it is at least uncertain whether the FPC could have withheld a certificate simply because a natural gas pipeline might threaten an endangered animal, for given the Act’s language and history, species preservation does not naturally fall within its terms. But we have held that the Endangered Species Act changed the regulatory landscape, “indicating] beyond doubt that Congress intended endangered species to be afforded the highest of priorities.” TVA v. Hill, 437 U. S. 153, 174 (1978) (emphasis added). Indeed, the Endangered Species Act demonstrated “a conscious decision by Congress to give endangered species priority over the ‘primary missions’ of federal agencies.” Id., at 185. And given a new pipeline’s potential effect upon habitat and landscape, it seems reasonable to believe, once Congress enacted the new law, the FPC’s successor (the Federal Energy Regulatory Commission) would act within its authority in taking species-endangering effects into account.
To take another example, the Food and Drug Administration (FDA) has, by statute, an “exclusive” list of criteria to consider in reviewing applications for approval of a new drug. See 21 U. S. C. § 355(d) (“If the Secretary finds . . . [e. g.,] the investigations ... do not include adequate tests by all methods reasonably applicable to show whether or not such drug is safe ... he shall issue an order refusing to *700 approve the application”). Preservation of endangered species is not on this “exclusive” list of criteria. Yet I imagine that the FDA now should take account, when it grants or denies drug approval, of the effect of manufacture and marketing of a new drug upon the preservation or destruction of an endangered species.
The only meaningful difference between the provision now before us, § 402(b) of the Clean Water Act, and the energy- and drug-related statutes that I have mentioned is that the very purpose of the former is to preserve the state of our natural environment — a purpose that the Endangered Species Act shares. That shared purpose shows that § 7(a)(2) must apply to the Clean Water Act a fortiori.